Opinion of the court delivered by
Judge Peck.
This was an action of ejectment, brought in June 1827, in the circuit court of White county for-acres of land, describing the same by abuttals. Duncan and Fisk, being served with process, appeared and pleaded not guilty. Upon the trial, Gibbs, the plaintiff, introduced and read to the jury.the record of a suit and judgment at law, obtained in the federal court holden at Nashville — Wilson vs. Samuel Denton. A fi. fa. to the Marshal of West Tennessee, founded on said judgment, commanding him to make the sum of $>3,800 (or thereabout) out of the estate of Denton, the defendant. This fi.fa. was levied on personal property. After sale of that for an inconsiderable sum, not amounting to the costs, an alias issued to the *257 Marshall in virtue of which he levied upon and sold 15,549 acres of land as the property of Denton, the de-fondant in said execution. Gibbs became the purchaser for the sum of fifty dollars; and took a deed from the Marshall for a moiety of said 15,549 acres, describing the same by the abuttals mentioned in the declaration in ejectment, which include the 15,549 acres. This deed was dated the 27th September 1826, and was acknowledged and registered. This deed was offered and read to the jury. It was agreed that Denton had a good title to the land in 1817. The defendants were proved in possession of parts of the land at the time of bringing the action; and held under deeds of conveyance, — the one to Duncan 20th August 1825, for 100 acres; the other to Fisk, 30th August, 1825, ior 80 acres; which deeds were made to the defendant by Thomas T. Thompson, by his Attorney in ■ fact, Samuel Denton. The defendants, in order to make out their title, produced a deed from S. Denton and his wife to Thomas T. Thompson, dated the 20th of October, 1814, for an undivided half of said 15,549 acres of land. This deed it was agreed might be read when offered, but that the court in his charge to the jury should be called upon to reject the same, said deed not having been proved and registered as required by law.
The plaintiff introduced much evidence to shew that the deed from Samuel Denton to Thomas T. Thompson for the one half moiety, was fraudulent. To establish this point, a bill in equity, filed by Watson vs. Denton and others, was offered by the plaintiff and read to the jury. After reading the bill and one of the answers, it was proposed by the defendants to read the answer of Denton; but this was objected to and the court sustained the objection. Denton was then introduced as a witness, but objected to because he had warranted the title by his deed to Thompson.
The defendants introduced and read to the jury a record from the county court, shewing a partition of the land in dispute between Litlh and Thompson. The record did not shew that notice had been given prior to til *258 ing the petition; but it appeared from the record that the parties appeared: and it did not appear that there was other persons or parties having any interest.
The court in charging the jury rejected the deed from Denton to Thompson, because not properly proved, left to the jury the question of fraud, and so much evidence as had been given touching the length of defendant’s possession': But we cannot see, by the record that the effect of the partition of the land between Little and Denton, was either debated, or brought to the view of the j ury in the court below.
It will now be for this court, first, to consider of the partition. Partition was one of the modes of assurance at common law. 2 B. Com. 323. Courts of equity took jurisdiction of the subject of partition as early as the reign of Elizabeth; and none questioned the right of that court to make partition in after times. 1 Mod. Rep. 198, 199. Our acts of assembly contain within them a simple and equitable mode of making partition: (see aels of 1787 ch. 17, and the acts there referred to) and when partition is made, the proceedings returned and recorded as prescribed by said acts, it is an assurance of the land in se- ’ veralty, “ and binding and valid in, among and between the claimants, their heirs and assigns forever.” Act 1787 ch. 17, and the latter part of sec. 1. This being the letter of the act, it is wholly useless to go into reasons in support of a partition in this state operating as a deed or assurance of title. In reason, aside from the act, it is just as effectual as a decree in chancery, by which the title is divested out of one person and vested in another. Act 1801, ch. 6, sec. 48.
As to the objection that it does not appear by record that notice had been given, as required by tbe act, it is sufficient to say the parties appeared; for so the record shews the fact to he. This cured want of notice.
Under this partition forming a several assurance of title, each party, it is contended, took possession and held for the space of seven years; whereby the statute of limitations of 1819, formed a complete bar to the title of *259 The court are the plaintiff. In other words Thomas T. Thompson and those claiming under him, (and the defendants so claim,) should be protected under the partition, unanimously of opinion that partition with seven years possession under it, is a bar by the very words of the act of 1819, and comes within the spirit of the previous acts of limitation.
This brings us to notice the evidence touching the possession. Without pretending to particulars, or weighing the evidence offered, it will be sufficient to say there is persuasive evidence of the fact, that under Denton, the land in question had been held by Thompson seven years. The time of taking possession and the objects for which taken, shew that it was not probable that the possession taken in 1819 or before, was likely to be abandoned.
But -was there evidence offered and rejected, which should have been received by the'court, which evidence, if received, would have established the possession? S. Denton was offered as a witness and rejected. The reason why rejected, we are told, was because he had warranted the land to Thompson; the defendant introduced that deed to make out his title; but it was at the time suggested that the deed would be rejected, because not well proved and registered. If the deed was introduced and read as admissible evidence, the title was complete in the defendants; if not introduced, then Denton was a competent witness; for, from any thing appearing in the case, he stood indifferent as any other person.
The deed, however, was used by the plaintiff, to shew that Denton could not be a witness, on account of his warranty. Shall it be permitted a plaintiff to use an instrument of writing to advantage, himself, and at the same time deny the use of the same instrument to his adversary, as to so much as it might profit him? This is contrary to an obvious rule of evidence. See 12 Johns. 223. 2 T. 5,. 44. 1 Esp. R. 409. 8 East 514. 2 Camp. R. 94.
Again, it had been agreed of record, that Denton, who was called on as a witness, had a good title to the land in 1817. If he had a good title then, he had power to make *260 the warrantee. And it will be remarked on this branch of the case, that the ejectment not being against Denton, the defendant in the judgment and execution, but against others, (not his tenants) it became necessary to the plaintiff, that the deed to Thompson from Denton should be introduced; else how could the plaintiff connect the title of the two defendants with that deed? If the title of the defendants had not been connected with the deed to Thompson, with what propriety could the plaintiff assail that deed for fraud,! For we must keep in view that Fisk and Duncan, not being parties to the judgment or exesution under which the plaintiff claims, could not be affected by the judgment, only as it might be made to overreach them by shewing that some deed in the chain of their title, subsequent to Denton, passed no estate. Put the deed of Denton to Thompson wholly out of the question, and how does the plaintiff’s right stand? The plaintiff would have a deed founded on the judgment under which he purchased, good to estop Denton without tracing the right further. Fisk and Duncan, however, not being parties to the judgment against Denton, and the deed, Denton to Thompson, being out of the way, and plaintiff' not bringing up his title from the grant by a regular chain to Denton, under whom he claimed, fails in making out any title good in law against those defendants. Possession by them was a good title against all but the legal owner. Who that was, could only be shewn by tracing up the title frornkhe grant. Having cut off' the link in the chain of title which connected Fisk and Duncan with Denton, by rejecting the deed to Thompson, neither is shewn to have the best title to the estate, and the defendants could not be turned out upon a doubtful right. The moment the deed, Denton to Thompson, was put out of the way, that moment all the question about fraud was put aside with it. The plaintiff had a title good against Denton, but of itself inoperative against the defendants, Fisk and Duncan.
It may be attempted to meet this by the agreement that Denton was seized and had good title in 1817. That *261 might be true, and between 1817 and the beginning of this action, June 1827, the defendants may have acquired it; and turn this question in any aspect, and the plaintiff was compelled to trace the title from its origin, or to use the deed in question, Denton to Thompson. And this brings us back to the dilemma under which the plaintiff had necessarily to labor, either of admitting the deed to reject Denton, or of rejecting the deed and admitting Den-ton as a witness; and which ever way we view the error, it is fatal to this judgment.
Again, did the court err in rejecting the answer of Denton to the hill of Little against him? This is a plain point; the record was one whole, and when the plaintiff introduced it he could not garble it. What had Denton done that should so deeply prejudice these defendants? It is said he is connected with the deed to Thompson. Well, the answer is, you have rejected that, and thereby removed the barrier. What Denton himself, or what his answer might have proved, is not" for this court to say. Denton, or his answer, or both hound together, might have proved possession for seven years, and so have established the bar. It is sufficient for this court, that both were admissible and both erroneously rejected.
On the question of registration, the court forbear to speak; not having had leisure to take that view of the subject which its importance demands.
Judgment reversed.